DENNIS, Judge.
Powerline Supply Company, Inc. filed suit against Roy Fair d/b/a Fair Electric Company for $51,856.80, allegedly representing the balance due for electrical material sold Fair for use in the construction of three shopping centers. Sometime prior to April 12, 1973, Ronnie Broughton, Power-line’s salesman, submitted separate bids on the three construction projects totaling $85,490.52. The bids were presented in the form of one page invoices showing the total amount for each job with typewritten sheets attached itemizing the material to be delivered without individual prices. Fair asked Broughton if the bid figures could be reduced by a total of $8,000. In response, with the agreement of Fair, Broughton refigured the proposals and submitted one bid for all three jobs in the amount of $79,511.84 on April 12, 1973. The bid was presented personally by Broughton to Fair and consisted of oral explanation and a handwritten memorandum of contract containing, in pertinent part, the following:
“Our quotation No’s 265, 262, & 271 — per lot
Basis — on all three jobs
$85,490.52
Deduct $ 5,078.68
New Total $80,411.84
ITE Deduct 900.00
$79,511.84”
Fair orally accepted the proposal on April 12, 1973 and Powerline supplied electrical material for the three shopping centers during the course of construction.
Although there were contract changes during construction, there is no dispute as to the description and price of material ultimately sold under the agreement. Nor is there any disagreement about the amounts which have been paid by Fair. Except for one item in the memorandum of contract, there is no dispute as to it. the $85,490.52 figure admittedly represents the total of the three separate bids originally submitted by Broughton, and the parties have no quarrel as to the $900 ITE deduction. It is the meaning of the $5,078.68 deduction which provides the sole issue in the case.
In the trial court Powerline contended that the $5,078.68 deduction resulted from price adjustments, substitutions and deletions pertaining to materials listed in the 3 original bids, which were agreed to by the parties before entering the consolidated contract on April 12, 1973. Fair took the position that the $5,078.68 deduction consisted entirely of a cash discount which Powerline made to meet competition. Furthermore, Fair argued, the material substitutions and deletions occurred after the agreement between the parties on April 12, 1973, and that consequently he was entitled to a credit against his indebtedness for these items. The trial court resolved the issue in favor of Powerline, granted it judgment in the amount of $51,856.80, and Fair appealed. We affirm for the reasons hereinafter assigned.
Broughton, Powerline’s salesman, testified that he met with Fair at the latter’s office on April 10, 1973. According to Broughton, they went over the three bid proposals pertaining to the shopping centers, item by item, and made a number of changes and deletions in the electrical materials listed. In corroboration of his testimony he referred to and explained in great detail handwritten notations on the three original proposals, which he said were made during his conference with Fair. Broughton testified he then went back to his office in another city to obtain prices for refiguring the bids in light of the ma *364 terial revisions. It is undisputed that he met with Fair again on April 12, 1973, and that on this occasion they agreed on the deduction of $900 for the deletion of a buss duct at one of the shopping centers. Broughton adamantly contends that the $5,078.68 represented the total deduction derived primarily from substitutions and deletions of - materials agreed to by them during the item by item analysis of the three original bids in their April 10, 1973 meeting. He conceded that the $5,078.68 deduction also included an $800 price concession obtained from one of Powerline’s manufacturers, which he passed on to Fair, but he flatly and repeatedly denied representing or otherwise leading Fair to believe the entire $5,078.68 deduction consisted purely of a competitive discount. In support of this version of the agreement, Powerline introduced evidence that the items it contends were deleted before April 12, 1973 were never ordered from its suppliers.
Broughton also presented at the trial a voluminous and detailed exhibit setting forth the price and description of all materials contained in the three original bids, all materials added and deleted, both before and after the April 12, 1973 contract date, and all materials shipped to the job sites and billed for. In order to shorten the record, the parties stipulated that Brough-ton’s testimony, if elicited in detail, would coincide with the entries in the exhibit. Fair, at one point in his own testimony, stated that he disagreed with the exhibit only in that he contended the items shown as having been deleted before the parties entered the consolidated contract on April 12, 1973, were actually deleted afterwards during the course of construction due to change orders approved by him.
Aside from his mere assertion to this effect, Fair presented specific testimony in but one instance to show that a deletion had occurred after the contract date. He presented a copy of construction plans prepared and inscribed by an unknown person indicating that the type of parking area lights at one of the shopping centers had been changed on April 12, 1973, the date the contract was entered by the parties. On cross-examination, he was unable to explain why this evidence did not tend more strongly to show that a decision to change these lights had occurred prior to the consummation of the agreement between Powerline and Fair on April 12, 1973. Since Fair contended that he personally approved all the electrical material deletions that were made during construction of the shopping centers, his failure to give a more detailed account of the dates and reasons for the changes is notable.
In his testimony, Fair claimed that the figure $5,078 represented two- straight cash discounts which Powerline obtained from its suppliers and passed on to Fair. He denied that he agreed to any deletions or changes of material in order to bring about the reduction. Fair contended that part of the discount, $3,367.68, was received from Lithonia Fixture Company due to his agreement to use its fixtures on all three jobs. The balance of $1,711 he testified was a price concession granted by I.T.E. Imperial Corporation. Consequently, according to defendant, he should receive credit for the cost of electrical merchandise listed in the three original bid proposals which was not shipped or used in construction. His testimony in this regard, however, was not consistent. At one point he contended that Powerline had agreed to give him a flat $5,000 cash discount. Later he took the position that the discount amounted to $5,078 but the materials deleted during the construction totaled $5,000. Yet, he also agreed that Powerline’s exhibit which showed material deletions in the sum of $5,078 was correct in amount and inaccurate only as to the date the deletions were made.
Although Fair did not call as a witness any representative from the Lithonia Fixture Company, he did present the testimony of Max Hales, a salesman for I.T.E. Imperial Corporation. Hales testified that he did not recall having made any deletions of *365 materials which occurred prior to April 12, 1973, except for the $900 buss duct which was to have been supplied by I.T.E. Hales further testified that he granted a straight cash deduction of approximately $1,700 at the request of Broughton. This testimony is in sharp conflict with that of Broughton who contended that the deduction of $1,711 was arrived at by a combination of factors: $402 from a change of material source from another company to I.T.E.; $509 from materials deleted that I.T.E. was to have supplied in the original three bids; and an $800 straight cash discount granted by I.T.E. Broughton flatly denied that I. T.E. gave a straight cash discount of $1,711 to Powerline.
In a painstaking opinion the trial judge sought to assess the maze of controverted facts and conflicting testimony bearing upon the central question in the case:
“Casual business practices such as those engaged in by the parties to this suit are an invitation to the kind of misunderstanding that frequently leads to litigation. The trier of fact is then placed in the unenviable position of sifting through a welter of inconsistent and contradictory testimony. The major source of difficulty in this case is the fact that the contract of April 12, 1973, upon which both parties rely, was not reduced to writing in any detail. Plaintiff Exhibit # 1 [the one page memorandum of contract] could hardly be classified as more than a skeletal outline of a contract. What electrical supplies the plaintiff was to furnish for the contract price of $79,511.84 were, regrettably, left to a verbal understanding. Plaintiff contends that it has fulfilled its obligations under the contract because certain deletions claimed by the defendant were listed in the original bids but were deliberately excluded by both parties from the April 12 contract. On the other hand, the defendant claims that those materials were included in the April 12 contract but were subsequently deleted. Obviously, if the parties had appended to the bid sheet identified as Plaintiff Exhibit # 1 a list of the materials to be supplied in connection with that bid this confused situation would not have arisen.
“Plaintiff offered positive testimony through its salesman, Broughton, who represented it in the dealings with defendant, that deletions marked on Plaintiff Exhibits #2, #3 and # 4 [the 3 original bids] were agreed to on April 10, 1973, at a meeting in the defendant’s office, and that because of these deletions the original bid price was reduced by the sum of $5,078.68. In an effort to refute this the defendant sought to show that the quoted figure was in reality a cash discount rather than the price of deleted material. Several unanswered questions appear to make untenable the defendant’s position on this point. First, if $3,367.68 of the $5,078.68 was a cash discount from the Lithonia Fixture Company, why wasn’t testimony from some representative of that company offered in support of this contention? Second, the defendant testified that he was promised a ‘flat’ cash discount of $5,000.00 by Brough-ton but never offered any proof to substantiate this claim. Instead he now argues that the figure of $5,078.68 is the amount of the cash discount. As a matter of fact, defendant’s position seems to be that he is entitled to have the figure of $5,078.68 deducted twice — first as shown on Plaintiff Exhibit # 1 and now as the price of materials deleted after April 12, 1973. It is simply inconceivable that this identical figure should, coincidentally, be both the agreed upon cash discount and the cost figure for deletions.
“Admittedly, the evidence indicates that $1,711.00 of the $5,078.68 could have been a cash discount from the I.T.E. Imperial Corporation. However, conceding that point for the sake of argument, the defendant still did not prove with the required degree of certainty that deletions of materials for which he should receive credit were made after April 12, 1973. Any attempt by this Court to allow the claimed credit would require a sojourn into the *366 realm of pure speculation in which we are not permitted to indulge.”
Except for his concluding remarks in which he seems to indicate that the defendant has the burden of proving when the material deletions occurred, we agree with the trial judge’s analysis. We reach the same result, but simply for the reason that the preponderance of the evidence requires it. The crucial question in the case is, what was the understanding between Broughton and Fair about the $5,078.68 deduction from the total amount of the three original bids ? We find from the evidence that it is more probable than not that the major portion of the deduction was brought about through an agreement by them to delete items of electrical materials from the original bids.
Accordingly, the judgment of the trial court is affirmed at the cost of the defendant.
Affirmed.